**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DALLAS TEXANS SOCCER CLUB, CROSSFIRE FOUNDATION, INC., and SOCKERS FC CHICAGO, LLC, | § § § § | Civil Action No._____ |
| Plaintiffs, | § § | |
| -vs.- | § § | |
| MAJOR LEAGUE SOCCER PLAYERS UNION, CLINT DEMPSEY, DEANDRE YEDLIN, MICHAEL BRADLEY, and all those similarly situated, | § § § § § § | |
| Defendants. | § § | |

### CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, Dallas Texans Soccer Club ("Texans"), Crossfire Foundation, Inc. ("Crossfire"), and Sockers FC Chicago Soccer Club ("Sockers"), (collectively the "US Youth Clubs") bring this Complaint against defendants, the Major League Soccer Players Union ("MLSPU"), the individual defendants, and the defendant class (collectively the "Defendants"), and allege upon personal knowledge with respect to themselves and their own acts, and upon information and belief with respect to other matters, as follows:

### I.   PARTIES

1.   Dallas Texans Soccer Club is a Texas non-profit entity having its primary business address in this district at 2013 Wing Point Lane, Plano, TX 75093 that operates multiple soccer facilities in this district. The Texans have over 13,000 registered boy and girl players and have produced many professional soccer players that play in the US and in foreign leagues.

2.     Crossfire Foundation, Inc. is a Washington non-profit entity having its primary business address at 16541 Redmond Way, No. 510-C, Redmond, WA 98052. The Crossfire has over 1,800 registered boy and girl players and has produced many professional soccer players that play in the US and in foreign leagues.

3.     Sockers FC Chicago, LLC is an Illinois non-profit entity having its primary business address at 545 S Consumers Avenue, Palantine, IL 60067. The Sockers have over 2,000 registered boy and girl players and have produced many professional soccer players that play in the US, and in foreign leagues.

4.     The MLSPU, an unincorporated association, is a labor organization representing employees in an industry affecting commerce as defined in Section 2, Subsection 5 of the National Labor Relations Act, 29 U.S.C. § 152(5) and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  MLSPU may be served with process through its Executive Director, Bob Foose, at the business address located at 7700 Old Georgetown Road, Suite 730, Bethesda, MD 20814.  The MLSPU is the exclusive collective bargaining representative of all players selected to play in the MLS.  The MLSPU has ongoing contacts and regularly conducts business in the Eastern District of Texas through its representatives who play at the MLS Club FC Dallas, which is headquartered in Frisco, Texas.

5.     With respect to the individuals named as defendants and class representatives:

(a)    Clint Dempsey is a professional soccer player currently under contract with MLS and plays for the Seattle Sounders FC in Seattle, Washington.

(b)    DeAndre Yedlin is a professional soccer player currently under contract with Tottenham Hotspur Football Club in London, England.

(c) Michael Bradley is a professional soccer player currently under contract with MLS and plays for Toronto FC, in Toronto, Ontario, Canada.

## II. JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1337; as an action arising under the Sherman and Clayton Acts (15 U.S.C. § 1 et seq.); under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; and under 28 U.S.C. § 1367.

7. Venue is proper in this district pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1391.

8. This Court has personal jurisdiction over the MLSPU because its representatives engage in sufficient contacts with the State of Texas such that the MLSPU should reasonably anticipate being hauled into court there. The MLSPU is a labor union with national jurisdiction representing players who are employed by FC Dallas in this district. Some of these players live in Texas and/or play for other professional soccer teams located in Texas, and are subject to the personal jurisdiction of this Court.

## III. INTRODUCTION

9. This action arises from the threat by the MLSPU on behalf of, and along with the individual Defendants, to bring an antitrust suit against the US Youth Clubs for attempting to obtain solidarity fees and training compensation from professional soccer clubs arising from international player transactions in accordance with the Regulations on the Status and Transfer of Players ("RSTP") of the Federation Internationale de Football Association ("FIFA") (Ex. A). The US Youth Clubs have initiated administrative suits in the Dispute Resolution Chamber ("DRC") of FIFA, in Zurich, Switzerland against several professional soccer clubs to obtain monetary awards of solidarity fees and training compensation from the international transfer of US players. The awards to the US Youth Clubs are imminent.

10. Should the DRC issue the US Youth Clubs awards of fees from the professional soccer clubs, FIFA will enforce the awards through sanctions if the professional soccer clubs who do not pay the awards. The sanctions against the offending professional club could include a ban on transferring players, a ban of playing in FIFA sanctioned matches, and expulsion from FIFA sanctioned national associations. Two of the US Youth Clubs' pending DRC administrative suits would require Major League Soccer, LLC ("MLS"), the top level professional soccer league in the US, to pay solidarity fees to the US Youth Clubs. MLSPU has stated it and its affected players will sue the US Youth Clubs along with the MLS, United States Soccer Federation, Inc. ("USSF"), and FIFA under United States antitrust laws if the US Youth Clubs attempt to enforce any DRC awards through FIFA.

11. Furthermore, the US Youth Clubs are working with USSF, MLS, and other professional soccer leagues in the United States to implement rules similar to the solidarity fee and training compensation system of the RSTP for US domestic player transactions. MLSPU has threatened a suit under United States antitrust laws against any party that implements or enforces any form of US domestic solidarity fees or training compensation.

12. Therefore, the US Youth Clubs seek declarations that: (1) the US Youth Clubs can lawfully receive solidarity fees and training compensation from professional soccer clubs for international US player transactions, which the US Youth Clubs are entitled to receive under the FIFA RSTP; and (2) the implementation of a system of solidarity fees and training compensation similar to that of the FIFA RSTP for player transactions within the US is also lawful and not a violation of US antitrust laws.

## IV. NATURE OF THE ACTION

13. This action involves a dispute over the lawfulness of US youth soccer clubs, both amateur and professional, receiving: (1) payment of solidarity fees by the purchasing soccer club that can constitute up to 5% of the transfer fee paid to acquire the US professional player; and (2) payment of training compensation by the signing professional club for the first professional signing of a US soccer player to a professional contract.

14. Each of US Youth Clubs is subject to the administrative rules of FIFA through a hierarchical chain of contracts. Each of the US Youth Clubs has signed on as a member of their respective state youth soccer association, e.g., the Dallas Texans Soccer Club is a member of the North Texas State Soccer Association, which is a member of the US Youth Soccer Association, which is part of USSF, which is a national association member of FIFA. The professional leagues of the US, such as MLS, are also members of USSF and FIFA.

15. The FIFA Rules and Regulations bind its members and must be adopted by national association members, except when compliance with a specific FIFA Rule is illegal under national law.

16. FIFA maintains an International Transfer Certificate ("ITC") for each player that allows the player to play in FIFA sanctioned matches and leagues. See, Ex. A. FIFA RSTP, Art. 9; Annexe 3. FIFA uses the ITC mechanism to monitor and control the international transfer of soccer players, including preventing the improper international transfer of minors. *See,* Ex. A, FIFA RSTP, Art. 19. "Protection of Minors."

17. The FIFA RSTP mandate the payment of solidarity fees to the youth clubs that trained the player where the solidarity fees arise from the international transfer of players

between clubs of different national soccer associations. Ex. A. FIFA RSTP, Art. 21; Annexe 5. The payment is owed by the acquiring professional soccer club.

18. The FIFA RSTP mandate the payment of training compensation to a player's youth training club when that player signs his/her first professional contract with a club in a national soccer association different than the nation where the amateur player is registered. *See*, Ex. A. FIFA RSTP, Art. 20; Annexe 4. The payment is owed by the signing professional soccer club.

19. The FIFA DRC adjudicates any dispute regarding international training compensation and solidarity fees in an administrative hearing and disciplines professional soccer clubs that do not pay awarded fees. Ex. A, FIFA RSTP, Art. 24, 25.

20. On or about August 3, 2013, Clint Dempsey, a US professional soccer player, was transferred from Tottenham Hotspur Football Club of the Football Association of the United Kingdom to the MLS and the United States. The transfer included the payment of a transfer fee that is subject to a solidarity fee.

21. On September 1, 2015, the Texans petitioned FIFA's DRC for the award of a solidarity fee from MLS (specifically, from the Seattle Sounders FC) arising from the transfer of Dempsey. The petition is pending resolution at the DRC.

22. On or about August 13, 2014, Deandre Yedlin, a US professional soccer player, was transferred from MLS to Tottenham Hotspur Football Club of the Football Association of the UK. The transfer included the payment of a transfer fee that is subject to a solidarity fee.

23. On September 3, 2015, Crossfire petitioned FIFA's DRC for the award of a solidarity fee from Tottenham Hotspur arising from the transfer of Yedlin. The petition is

pending resolution at the DRC and is to be decided and an award potentially given on June 28, 2016, or soon thereafter.

24. On or about January 9, 2014, Michael Bradley, a US professional soccer player, was transferred from AS Roma of the Italian Football Federation to the MLS (Toronto FC) in Canada. The transfer included the payment of a transfer fee that is subject to a solidarity fee.

25. On September 3, 2015, the Sockers petitioned FIFA's DRC for the award of a solidarity fee from MLS (Toronto FC) arising from the transfer of Bradley. The petition is pending resolution at the DRC.

26. On or about January 15, 2014, Eric Pothast, then a US amateur soccer player, signed a contract with Angelholms FF of the Swedish Football Association. Pothast is a US youth player that trained several years at the Sockers.

27. On October 14, 2015, the Sockers petitioned in the FIFA DRC for the award of training compensation from Angelholms FF arising from the signing of Pothast. The petition is pending resolution at the DRC.

28. The FIFA RSTP states that, with respect to transfer of players within a national association, a system should be set up to reward clubs investing in the training and education of young players. FIFA RSTP, Art. 1(2) specifically states:

> The transfer of players between clubs belonging to the same association is governed by specific regulations issued by the association concerned in accordance with article 1 paragraph 3 below, which must be approved by FIFA. Such regulations shall lay down rules for the settlement of disputes between clubs and players, in accordance with the principles stipulated in these regulations. <u>Such regulations should also provide for a system to reward clubs investing in the training and education of young players</u>. (emphasis added)

29. In accordance with the directive of the FIFA RSTP, the US Youth Clubs have been meeting with USSF, the professional soccer leagues, MLSPU, and other interested

stakeholders to establish a system to "reward clubs investing in the training and education of young players." The rewards would be paid to the clubs such as the US Youth Clubs and youth academies of the US professional clubs. Meetings regarding a potential domestic reward system occurred in Chicago, Illinois, on October 16, 2015, and May 24, 2016.

30. At the May 24th meeting, the representative of the MLSPU openly argued that it would be an act of antitrust against its US player members and illegal in the US for the US Youth Clubs to enforce, anywhere in the world, an award from the FIFA DRC of solidarity fees or training compensation. The MLSPU also stated that it would be an act of antitrust against its US player members for the US Youth Clubs, USSF, and the professional clubs to agree to a domestic reward system within the US to implement and enforce training compensation and solidarity fees, similar to the FIFA RSTP.

31. At the May 24th meeting, a representative from the MLS alerted the representatives of the US Youth Clubs that the MLSPU and affected member players threatened to bring an antitrust lawsuit against the US youth clubs, MLS, USSF, and FIFA upon any of the US Youth Clubs receiving an award of training compensation or solidarity fees from the FIFA DRC.

32. In view of the explicit threat of litigation and the imminent decisions from the FIFA DRC in the pending petitions, the US Youth Clubs seek a declaration from the Court that the US Youth Clubs can lawfully receive solidarity fees and training compensation from professional soccer clubs under the FIFA RSTP for international US player transactions.

33. In view of the explicit threat of litigation by the MLSPU if the US Youth Clubs, along with the USSF and other professional clubs, agree to implement within the US a system of solidarity fees and training compensation, similar to that of the FIFA RSTP, the US Youth Clubs

seek a declaration from the Court the implementation of such a system within the US is lawful and not a violation of the US antitrust laws.

34. In the event that the US Youth Clubs receive an award of training compensation and/or solidarity fees from the FIFA DRC in any of the pending actions, noting that a decision in the Crossfire vs. Tottenham Hotspur action is imminent, the US Youth Clubs will agree to refrain from seeking to enforce any award within FIFA, a national association, or a court of competent jurisdiction while this matter is pending and the question of whether such enforcement is a violation of antitrust laws remains unresolved by this Court.

## V.   CLASS ACTION ALLEGATIONS

35. This action is brought, in part, against a defendant class pursuant to Rules 23(a), (b)(1) and (b)(2) of the Federal Rules of Civil Procedure. The class consists of (a) all US soccer players who have been or are under contract with the MLS or other similarly situated professional club and whose signing of a professional contract with the MLS or having solidarity fees applicable from the payment of a transfer fee pursuant to a transfer into or out of the United States, such that the payment of training compensation or a solidarity fee is mandated by the FIFA RSTP; and (b) all other US amateur and professional soccer players whose professional contract signings with US professional soccer clubs and whose domestic transfers between US professional soccer clubs would be subject to training compensation and solidarity fees should the USSF implement a system of US domestic training compensation and solidarity fees similar to the system contained in the FIFA RSTP. The individual Defendants described in paragraph 5 are the class representatives.

36. The class is so numerous and geographically widespread that joinder of all members is impracticable. At a minimum, the class consists of thousands of players.

37. There are questions of law and fact common to the class, including the questions of whether: (a) US Youth Clubs can lawfully receive solidarity fees and training compensation from professional soccer clubs that are due under the FIFA RSTP for international US player transactions, including current members of the MLSPU; and (2) the implementation of a domestic training compensation and solidarity fee system within the US, similar to that in the FIFA RSTP, is lawful and not a violation of the US antitrust laws.

38. The claims or defenses of the class representatives will be typical of the claims or defenses of the class. These claims or defenses include the assertions that (a) the enforcement of the FIFA RSTP by the US Youth Clubs for US player transfers and signings into and out of the US violates US antitrust laws; and (b) the implementation of a domestic training compensation and solidarity fee system within the US similar to that in the FIFA RSTP is unlawful and would be a violation of US antitrust laws.

39. The representative Defendants will fairly and adequately protect the interests of the class they represent.

40. Each player in the class is currently subject to the FIFA RSTP for existing player transactions into and out of the US.

41. The prosecution of separate actions by or against individual members of the class would create the risk of: (a) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the enforcement of FIFA RSTP training compensation and solidarity fees on the international transactions of US soccer players; and (b) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other class members not parties to the adjudications or substantially impair or impede the ability of such absent class members to

protect their interests, thereby making declaratory relief with respect to the questions of law and fact identified above appropriate with respect to the class as a whole.

42. By seeking awards under the FIFA RSTP at the DRC, the US Youth Clubs have acted or will act on grounds generally applicable to the class, thereby making declaratory relief with respect to the questions of law and fact identified above appropriate with respect to the class as a whole.

## VI. ALLEGATIONS COMMON TO ALL CLAIMS

43. In 1997, a class of US soccer players, with 8 lead player plaintiffs, brought suit against the then newly-formed MLS and USSF for antitrust violations against US players based on the operations of MLS. See *Fraser v. Major League Soccer*, Case No. 97-cv-10342 (D. Mass.). The plaintiffs were ultimately unsuccessful because MLS' operation was not found to violate US antitrust laws. See generally *Fraser v. Major League Soccer*, 284 F.3d 47 (1st Cir. 2002). Count II of the original Complaint complained of antitrust from the implementation of "FIFA Transfer Fee Policies" that were in force at that time. See, *Fraser*, 284 F. 3d at, fn. 2.

44. In order to obtain dismissal from the Fraser case, USSF stipulated in a consent order that it would not follow the FIFA rules on transfer fees then in place. See *Fraser v. Major League Soccer, LLC*, 7 F. Supp. 2d 73, 75 fn. 1 (D. Mass. 1998) which states in pertinent part:

> The players had originally asserted this claim against the United States Soccer Federation, Inc. (the 'USSF'), as well, but USSF has since entered into a stipulation that it never has and never will pay nor request a transfer fee payment for an out-of-contract player. As a result, the players have withdrawn Count II as against the USSF. The USSF has no teams of its own, so it is unlikely that it would have paid a transfer fee absent the stipulation.

45. The current FIFA RSTP involving training compensation and solidarity fees were not implemented by FIFA until 2001.

46. The *Fraser* consent order between the player class and USSF entered July 28, 1997, attached hereto as Ex. B, stated that:

> USSF will not impose, implement, or enforce, in any way, those rules, statutes, or regulations adopted by the Federation Internationale de Football Association relating to the payment of transfer fees or training and development fees ('transfer fee rules') for professional soccer players who are free of contractual obligations to other teams ('out of contract players')..

47. To remove the main enforcement mechanism of FIFA to impose sanctions if the then existing FIFA RSTP were not followed in the US, USSF removed the threat of an International Transfer Certificate not being transferred by FIFA by allowing players to play in MLS without an ITC in Ex. B, ¶3 which provides:

> USSF will not directly or indirectly prevent an out of contract player from playing in MLS on the ground that such a player has not received an international transfer certificate from a foreign soccer association because the player's previous team has demanded a transfer fee and MLS has declined to pay such a fee..

48. MLSPU's representative stated in the October 16, 2015 and May 24, 2016 meetings in Chicago that they believe the terms of the *Fraser* consent order apply to the current FIFA RSTP regarding training compensation and solidarity fees thereby preventing USSF from enforcing any awards from the FIFA DRC regarding the international transfer of US players. MSLPU also claimed that the Fraser consent order prevents the USSF from agreeing with the US Youth Clubs and professional clubs to implement a domestic reward system similar to the FIFA RSTP.

49. The US Youth Clubs were not parties in the *Fraser* case or signatories to the *Fraser* consent order, are not a privies or agents of USSF, and are not otherwise bound by the *Fraser* consent order. Moreover, the US Youth Clubs contend that the *Fraser* consent order predates the modern FIFA RSTP and, at least, it is unclear how the terms of that consent order may or may not apply to the training compensation and solidarity fee award system.

50. Bob Foose, Executive Director of the MLSPU was the MLSU representative at the October and May Chicago meetings regarding FIFA RSTP for international player transfers and potential implementation. Mr. Foose spoke on behalf of the MLSPU and its constituent players and represented the view of those parties and their intentions.

51. At the May meeting, Mr. Foose claimed that it would be unlawful and an antitrust violation for the US Youth Clubs to enforce any award of training compensation from the FIFA DRC, specifically including the potential award in the forthcoming decision of Crossfire v. Tottenham Hotspur at the DRC.

52. Mr. Foose stated that the imposition of any training compensation or solidarity fee, either internationally or domestically, is an illegal restraint of player trade. Mr. Foose argued that the purchase and professional signing of a soccer player involves a "finite amount" of money, and that any money from that transaction that is forced to go to the youth training clubs is money that is directly taken from the player in the transaction. Mr. Foose's position was, in essence, that a player transaction is a zero-sum game between the player and the youth training club, and US antitrust law inures to the benefit of the player to block the imposition of a solidarity fee or training compensation.

53. The US Youth Clubs disagreed and showed that FIFA RSTP for international transfers is applicable all over the world and the applicability of these fees is already recognized in all international player transfers. Furthermore, agreements can be made and are currently made between professional clubs and youth training clubs regarding the potential payment of training compensation on a case-by-case basis that do not follow the award system of the FIFA RSTP.

54. The US Youth Clubs further established that FIFA is a voluntary organization to join and parties are free to not participate in FIFA. The training compensation and solidarity fee system of the FIFA RSTP can be considered a tax on professional clubs and national association to use the ITC and FIFA Transfer Matching System (TMS) for the exchange and regulation of players. This voluntary participation is demonstrated by USSF agreeing to opt out of ITC requirement for a player to play in the MLS under the *Fraser* consent order.

55. With respect to the implementation of a US domestic reward system, the US Youth Clubs established that almost all participating countries have a reward system in place similar to the FIFA RSTP, including Canada and Mexico. The US Youth Clubs further noted that there is a strong public policy interest in FIFA enacting the RSTP, which as stated, is designed to reward clubs that train and educate youth players, and that policy certainly applies in the US.

56. At the May meeting, a representative of the MLS informed the US Youth Clubs that the statements of Mr. Foose presented the legal position of MLSPU and its players, and that MLSPU and its affected players intended to bring an antitrust action against the US Youth Clubs, MLS, USSF and FIFA when one of the US Youth Clubs obtains an award from the FIFA DRC in the four pending cases there.

57. The MLS representative also stated that the MLSPU would seek to enjoin the implementation of any US domestic system of training compensation and solidarity fees similar to the FIFA RSTP as a violation of US antitrust laws.

58. The Crossfire v. Tottenham Hotspur action at the DRC is due to be decided on or after June 28, 2016. The specific decision dates for the remaining DRC actions brought by the US Youth Clubs are unknown, but an award decision could occur at any time.

59. Given that at least one decision from the DRC is imminent and in view of the explicit threat made against the US Youth Clubs by the MLSPU, the US Youth Clubs bring this declaratory action to ensure that they do not violate US antitrust laws by obtaining awards from the FIFA DRC or by agreeing to implement a domestic reward system in the US similar to the FIFA RSTP.

60. It is unclear whether any antitrust cause of action that might arise could be properly asserted by MLSPU or its players individually. *See, e.g.*, *National Hockey League v. National Hockey League Players Association*, 789 F. Supp. 288 (D. Minn. 1992), *contra*, *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (As a matter of law, a union has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted not the relief requested requires the participation of individual members in the lawsuit.) The MLS representative did state that the antitrust cause of action would be brought by MLS in conjunction with the player affected by the DRC award.

61. In view of the ambiguity of whether the MLSPU by itself can maintain an antitrust cause of action, the US Youth Clubs have also named the defendant class of affected players in this lawsuit. At a minimum, the affected players have a definite interest in the outcome of the present action even if they are not a necessary party.

### VII. FIRST CLAIM FOR DECLARATORY RELIEF

62. Plaintiffs incorporate paragraphs 1 through 62, above, as though fully set forth herein.

63. The US Youth Clubs are members of FIFA and contractual parties to the rules and regulations of FIFA. Under those rules, the US Youth Clubs are entitled to training compensation and solidarity fees for the relevant international transactions regarding US players in accordance with the FIFA RSTP.

64. The US Youth Clubs are entitled to enforce any awards they receive for training compensation and solidarity fees in their pending actions at the FIFA DRC for the international transfers regarding the defendant class of US players.

65. The MLSPU contends to the contrary and has threatened suit against the US Youth Clubs if they attempt to enforce any award from the FIFA DRC. Thus, there exists a substantial, present and justiciable case and controversy between the US Youth Clubs and the MLPSU and defendant class concerning the antitrust legality of the payment to US Youth Clubs of training compensation and solidarity fees under the FIFA RSTP with respect to the international transfer and signing of US players.

66. By reason of the foregoing, the US Youth Clubs are entitled to a declaration that the receipt by any US youth clubs of solidarity fees and training compensation from professional soccer clubs for international US player transactions under the FIFA RSTP does not violate the antitrust laws.

### VIII. SECOND CLAIM FOR DECLARATORY RELIEF

67. Plaintiffs incorporate paragraphs 1 through 67, above, as though fully set forth herein.

68. With respect to transfer of players within a national association the FIFA RSTP states that, "a system should be set up to reward clubs investing in the training and education of young players."

69. The US Youth Clubs, along with USSF and the US professional soccer clubs are members of and contractual parties to the rules and regulations of FIFA, and are obligated to comply with the express goals and policies of FIFA.

70. The US Youth Clubs, along with USSF and the US professional soccer clubs, are lawfully entitled to create and implement a domestic system to reward all US youth soccer clubs, both amateur and professional, that invest in the training and education of young players.

71. The MLSPU contends to the contrary and has threatened suit against the US Youth Clubs if the US Youth Clubs, along with the USSF and US professional clubs, attempt to implement any reward system for US youth soccer clubs that awards training compensation and solidarity fees similar to that of the FIFA RSTP for player transactions within the US. Thus, there exists a substantial, present and justiciable case and controversy between the US Youth Clubs and the MLPSU and defendant class concerning the antitrust legality of the implementation in the US of a system of awarding training compensation and solidarity fees to US youth soccer clubs similar to the FIFA RSTP.

72. By reason of the foregoing, the US Youth Clubs are entitled to a declaration that the implementation of a system of solidarity fees and training compensation similar to that of the FIFA RSTP for player transactions within the US does not violate antitrust laws.

73. The US Youth Clubs further request a speedy hearing on their claims for declaratory relief to which they are entitled pursuant to Rule 57 of the Federal Rules of Civil Procedure.

## IX. PRAYER

WHEREFORE, Plaintiffs request that this Court:

(a) enter judgment declaring that the receipt by US Youth Clubs of solidarity fees and training compensation from professional soccer clubs for international US player transactions which the US Youth Clubs are entitled to receive under the FIFA RSTP does not violate antitrust laws;

(b) enter judgment declaring that the implementation of a reward system of solidarity fees and training compensation, similar to that of the FIFA RSTP, for player transactions within the US does not violate antitrust laws;

(c) issue an order determining that the claims alleged herein may be maintained as a defendant class action under rule 23(a), (b)(1)(A), (b)(1)(B), and/or (b)(2) of the Federal Rules of Civil Procedure and certifying the Class as defined above; and

(d) grant such other and further relief as the Court shall deem just and proper.

*/s/David B. Koch*
David B. Koch
Texas Bar No. 11643850
John Mongogna
Texas Bar No. 24002627
COATS ROSE, P.C.
14755 Preston Road, Suite 600
Dallas, Texas 75254
dkoch@coatsrose.com
jmongogna@coatsrose.com
Telephone: (972) 788-1600
Facsimile: (972) 702-0662

Lance D. Reich (*pro hac vice pending*)
Washington Bar No. 41090
HAN SANTOS REICH, PLLC
1411 4th Avenue, Suite 910
Seattle, Washington 98101
Telephone: (206) 489-2648
Facsimile: (425) 374-0921
lance@hansantos.com

*Attorneys for Plaintiffs*