# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| DALLAS TEXANS SOCCER CLUB, § <br> CROSSFIRE FOUNDATION, INC., § <br> SOCKERS FC CHICAGO, LLC § <br> § <br> v. § <br> § <br> MAJOR LEAGUE SOCCER PLAYERS § <br> UNION, CLINT DEMPSEY, DEANDRE § <br> YEDLIN, MICHAEL BRADLEY § | Civil Action No. 4:16-CV-00464 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion of Defendant Major League Soccer Players Union to Dismiss for Lack of Personal Jurisdiction (Dkt. #11). Having considered the pleadings, the Court finds the motion should be granted.

### BACKGROUND

Plaintiffs are three youth soccer clubs located in the United States. Each youth soccer club is associated with the United States Soccer Federation, Inc. (the "U.S. Soccer Federation"), which is a Federation Internationale de Football Association ("FIFA") national association member. FIFA national association members must adopt FIFA rules and regulations, except when compliance with a specific FIFA rule is illegal under national law.

Under FIFA rules, professional soccer clubs must pay youth soccer clubs that trained players certain fees called training compensation and solidarity fees. When a player signs his or her first contract with a professional soccer club in a different national association, the professional soccer club must pay the youth club training compensation. When a player is transferred to a professional soccer club in a different national association, the professional soccer club acquiring the player must pay the youth club a solidarity fee. Disputes over the payment of training

compensation and solidarity fees are adjudicated by FIFA's Dispute Resolution Chamber in Zurich, Switzerland.

Plaintiffs initiated administrative proceedings before the Dispute Resolution Chamber seeking either training compensation or solidarity fees in connection with the signing or transfer of players Plaintiffs trained. Specifically, Plaintiff Dallas Texans Soccer Club (the "Dallas Texans") trained Clint Dempsey and is seeking a solidarity fee in connection with Dempsey's transfer to Major League Soccer, LLC from the Football Association of the United Kingdom. Plaintiff Crossfire Foundation Inc. ("Crossfire") trained Deandre Yedlin and is seeking a solidarity fee in connection with Yedlin's transfer to the Football Association of the United Kingdom from Major League Soccer, LLC. Plaintiff Sockers FC Chicago, LLC ("Sockers") trained Michael Bradley and is seeking a solidarity fee in connection with Bradley's transfer to Major League Soccer, LLC from the Italian Football Federation. Plaintiff Sockers also trained Eric Pothast and is seeking training compensation in connection with his signing with Angelholms FF of the Swedish Football Association.

Defendant Major League Soccer Players Union (the "Players Union") is the exclusive collective bargaining representative of all players selected to play in Major League Soccer, LLC. The Players Union represents fifty-nine players in Texas, including at least twenty-one players from the Dallas Texans. The Players Union has two union representatives continuously present in Texas and sends employees to meet with players in Texas. The Players Union is an unincorporated association with offices in Bethesda, Maryland.

On May 24, 2016, Plaintiffs, the Players Union, the U.S. Soccer Federation, and professional soccer leagues met in Chicago, Illinois, to discuss a training compensation and solidarity fee system for U.S. youth clubs. Plaintiffs allege that during this meeting, Bob Foose,

the Executive Director of the Players Union, stated that any effort by Plaintiffs to enforce training compensation or solidarity fees would violate federal antitrust law. Plaintiffs also allege that a representative from Major League Soccer, LLC alerted U.S. youth club representatives that the Players Union threatened to file an antitrust lawsuit against Plaintiffs, the U.S. Soccer Federation, and others if the Dispute Resolution Chamber awarded Plaintiffs training compensation or solidarity contributions.

On July 1, 2016, Plaintiffs filed a Class Action Complaint for Declaratory Relief against the Players Union, Dempsey, Yedlin, Bradley, and all those similarly situated (Dkt. #1). Plaintiffs seek a declaration that any U.S. youth club's receipt of training compensation or solidarity fees does not violate antitrust laws. Plaintiffs also seek a declaration that the implementation of a system of training compensation and solidarity fees for player transactions within the U.S. does not violate antitrust laws.

On November 3, 2016, the Players Union filed the pending motion to dismiss for lack of personal jurisdiction (Dkt. #11). On December 1, 2016, Plaintiffs filed a response (Dkt. #23). The Players Union filed a reply on December 21, 2016 (Dkt. #34).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, the court must accept as true the plaintiff's uncontroverted allegations and resolve factual conflicts in favor of the plaintiff. *Id.*

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction comports with the due process clause of the Fourteenth Amendment. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016). Because the Texas long-arm statute extends as far as constitutional due process permits, a court only needs to determine whether a suit in Texas is consistent with the due process clause of the Fourteenth Amendment. *Id.* The due process clause requires that a court exercise personal jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

## ANALYSIS

### *General Jurisdiction*

The Players Union argues the Court does not have general jurisdiction over it and moves for dismissal under Rule 12(b)(2).

General jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). General jurisdiction exists only when the defendant's contacts with the State constitute "continuous and systematic" general contacts with the forum. *Id.* at 416. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in

4

which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). The inquiry is not whether a corporation's "in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919).

A corporation is fairly regarded as at home in its place of incorporation and principal place of business. *Id.* at 760. General jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. Other courts have held that the *Daimler* "essentially at home" standard applies to unincorporated associations. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals, and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity"); *Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 29 (D.D.C. 2015).

Plaintiffs argue the Court has general jurisdiction over the Players Union because it "(1) sends employees to meet with players, (2) has 59 of it[s] MLS players resident, (3) controls at least two union representatives that act on behalf of the interests of the [Players Union], and (4) recruits youth soccer players to join the [Players Union], including players of the Plaintiff." (Dkt. #23 at p. 9).

The Players Union responds that it has limited contacts with Texas and is not "essentially at home" in Texas. The Players Union notes that it is party to a collective bargaining agreement with Major League Soccer, L.L.C. and not with any individual Texas team. The Players Union

5

represents 588 players from twenty teams in Major League Soccer, L.L.C. Only two of these teams, consisting of fifty-nine players, are in Texas.

The Players Union further argues that although there are two union representatives in Texas, each team has an elected representative, meaning there are twenty union representatives throughout the country. The Players Union states that it meets with and recruits players from every Major League Soccer, L.L.C. team. Over the last five years, the Players Union has had a total of three meetings with members playing in Texas. Additionally, the Players Union argues that it does not have any offices in Texas, does not maintain any bank accounts in Texas, does not have any employees in Texas, and none of its Executive Board members play for a team located in Texas.

The Court finds that Plaintiffs have not established a prima facie case supporting general jurisdiction over the Players Union. Although the Players Union meets with players in Texas and represents fifty-nine players in Texas, the Players Union's contacts with Texas are viewed in light of its activities nationwide. The Players Union represents 588 players from twenty teams nationwide. Each of these teams has a union representative and meets with employees from the Players Union. The Players Union's offices and employees are not located in Texas. The Players Union's contacts in Texas thus only represent a portion of its total activity as an association. These contacts are not so continuous and systematic as to render the Players Union essentially at home in Texas. The Court does not have general jurisdiction over the Players Union.

*Specific Jurisdiction*

The Players Union next argues the Court does not have specific jurisdiction over it and moves for dismissal under Rule 12(b)(2).

Specific jurisdiction exists when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8.

A single act by a defendant may establish specific jurisdiction if the act in the forum state is substantially related to the suit. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

The Fifth Circuit follows a three-step analysis in determining whether a court has specific personal jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985). "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 760 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

*Whether Plaintiffs' Cause of Action Arises out of the Players Union's Forum-Related Contacts*

Even if Plaintiffs could establish that the Players Union's representation and meetings with players in Texas constitute minimum contacts with Texas, Plaintiffs do not allege that these contacts gave rise to Plaintiffs' declaratory judgment action. Instead, Plaintiffs allege that the

7

cause of action arises from the Players Union "threatening the Dallas Texans, along with the other clubs, with an antitrust suit." Plaintiffs argue that the Players Union "admittedly made a threat to the youth clubs to sue them for antitrust . . . and that clearly contains a threat to sue the Texans in the State of Texas."

A defendant's threat of litigation does not establish specific jurisdiction over the defendant in a declaratory judgment action. *See Xtera Communs., Inc. v. TPACK A/S*, 2010 WL 4118803 (E.D. Tex. Sept. 1, 2010) (dismissing claim for declaratory relief for lack of personal jurisdiction because "demands for payment sent to Texas were the result of the unilateral action of the plaintiffs"); *Thousand Trails, Inc. v. Foxwood Hill Prop. Owners Ass'n*, 1999 WL 172322 (N.D. Tex. Mar. 22, 1999) ("the vast majority of the courts have held that the nonresident defendant's action in sending a demand letter to the plaintiff is insufficient to create personal jurisdiction."). Here, the threat of suit giving rise to the declaratory judgment action occurred in Chicago, Illinois, not in Texas. The Players Union did not threaten to file suit in Texas against any Texas youth club. A threat of litigation directed specifically against the Dallas Texans would not be sufficient to establish specific jurisdiction over the defendant in a declaratory judgment action.

Further, a plaintiff or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state giving rise to the cause of action. *Moncrief*, 481 F.3d at 311. Plaintiffs argue that the Court has specific jurisdiction over the Players Union because it "directed a threat of litigation at the Dallas Texans for actions that *the club* does in the State of Texas." (emphasis added). Plaintiffs' ability to collect training compensation and solidarity fees in Texas relates to Plaintiffs' contacts with Texas. The solidarity fee the Dallas Texans seek relates to Dempsey's transfer to Major League Soccer, LLC from the Football Association of the United Kingdom. The Dallas Texans claims it is entitled to these fees under FIFA regulations because it

8

trained Dempsey. The Players Union is not a party to the trade contract between the professional soccer clubs that would give rise to Plaintiffs' claim for solidarity fees in Texas. The Players Union's contacts with Texas do not give rise to the cause of action.

In an analogous case, the Fifth Circuit held that Texas lacked specific personal jurisdiction over a defendant who made allegedly defamatory statements about the plaintiff outside of Texas. *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010). In *Clemens*, the defendant was an athletic trainer who had traveled to Texas to train the plaintiff and multiple other professional athletes at least thirty-five times. *Id.* at 377. The defendant made allegedly defamatory statements that he had injected the plaintiff with performance-enhancing drugs in Toronto and New York. *Id.* Although the injections and defamatory statements related to the training relationship, the Fifth Circuit held that Texas was not the focal point of defamatory statements, "the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state." *Id.* at 380. The Fifth Circuit further held that harm suffered in Texas and Defendant's knowledge of the likelihood of harm in Texas did not establish a prima facie case of jurisdiction. *Id.*

Likewise, here, Texas was not the focal point of the threat of an antitrust suit and the threat was not directed to Texas residents any more than residents of any state. The Players Union's knowledge that the Dallas Texans might suffer harm in Texas as a result of an antitrust suit precluding them from collecting training and solidarity fees in Texas is insufficient to establish personal jurisdiction.

*Whether the Exercise of Personal Jurisdiction is Fair and Reasonable*

Plaintiffs have not successfully established that the Players Union had minimum contacts with Texas giving rise to the declaratory judgment. The Court therefore will not shift the burden

9

to the Players Union to defeat jurisdiction by showing that its exercise would be unfair or unreasonable.

## CONCLUSION

It is therefore **ORDERED** that the Motion of Defendant Major League Soccer Players Union to Dismiss for Lack of Personal Jurisdiction (Dkt. #11) is hereby **GRANTED** and Plaintiffs' claims against Defendant Major League Soccer Players Union are hereby **DISMISSED**.

**SIGNED this 29th day of March, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE